Justin C. Frankel (JF-5983)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue - Suite 301
Garden City, New York 11530
(516) 222-1600

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------
DONNA HUGHES,                            :
                                         :     Docket No.:
                                         :
              Plaintiff,                 :     COMPLAINT
                                         :
         - against -                     :
                                         :     ECF
                                         :
SUN LIFE INSURANCE AND ANNUITY :
COMPANY OF NEW YORK,                     :
BRIAN SULLIVAN, AND DEBRA                :
CONNER,                                  :
              Defendants.                :
-----------------------------------------------------
```

Plaintiff, DONNA HUGHES, by and through her attorneys, FRANKEL & NEWFIELD, P.C.,

as and for her Complaint against Defendants SUN LIFE INSURANCE AND ANNUITY

COMPANY OF NEW YORK, BRIAN SULLIVAN, AND DEBRA CONNER hereby sets forth the

following:

### THE PARTIES

1.      At all times hereinafter mentioned, Plaintiff DONNA HUGHES, was and still

is a resident of the County of New York, State of New York.

2.     Sun Life Insurance and Annuity Company of New York is a Wholly Owned Subsidiary of Sun Life Assurance Company of Canada (U.S.)

3.     Sun Life Insurance and Annuity Company of New York (hereinafter "Sun Life") offers group long term disability policies to employers such as Plaintiff's employer, D'Amato & Lynch.

4.     Upon information and belief and at all times hereinafter mentioned, Defendant Sun Life is a corporation organized and existing under the laws of the State of New York with its principal place of business at 60 East 42nd Street, Suite 1115, New York, New York 10165.

5.     Upon information and belief and at all times hereinafter mentioned, Defendant Brian Sullivan, was and still is a resident of West Columbia, South Carolina.

6.     Brian Sullivan was and is, upon information and belief, an employee and a Senior Benefit Analyst for Defendant Sun Life at its Wellesley Hills, MA office.

7.     Upon information and belief Defendant, Debra Conner, was and still is a resident of Massachusetts.

8.     Debra Conner was and is, upon information and belief, an employee of and a Claims Manager for Defendant, Sun Life at its Wellesley Hills, MA office.

9.     Upon information and belief Defendants, Brian Sullivan and Debra Conner exercised discretionary authority or discretionary control with respect to management of Plaintiff's long term disability plan.

## JURISDICTION AND VENUE

10.     Jurisdiction is founded on 28 U.S.C. § 1131 and 29 U.S.C. § 1132(e) because the claims herein arise under the Employee Retirement Income Security Act of 1974 [29 U.S.C. §1001 *et seq*.] and the regulations promulgated thereunder.

11.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§1391(b)(1) and (c) and 29 U.S.C. 1132(e)(2) because Defendants reside in this judicial district, are subject to personal jurisdiction in this judicial district, and maintain contacts in this judicial district sufficient to subject them to personal jurisdiction.

## FACTS

12.     At all times hereinafter mentioned, Plaintiff was an employee of D'Amato & Lynch.

13.     On or about September 24, 2001, Defendant issued Group Long Term Disability policy number 86791to D'Amato & Lynch (the "Policy").

14.     At all times hereinafter mentioned, said disability policy of insurance was issued for the benefit of certain eligible D'Amato & Lynch employees in exchange for the payment of premiums by D'Amato & Lynch.

15.     At all times mentioned herein, Plaintiff Hughes was an employee eligible for disability benefits and is an insured under the Policy issued by Defendant.

16.     The Policy provides, *inter alia*, that disability insurance payments will be made to Plaintiff Hughes in the event that she becomes disabled due to an injury or sickness.

17.     On or about June 16, 2002, during the period within which the Policy was in full force and effect, and while Plaintiff Hughes was an eligible employee, Plaintiff Hughes became

3

disabled within the meaning and pursuant to the terms of the Policy in that she was unable to

perform the Material and Substantial Duties of her Own Occupation as an attorney including but not

limited to the:

        a.     Ability to carry large, bulky files to and from the office to her home and to court;

        b.     Ability to remain standing in one position for extended periods of time;

        c.     Extensive travel, which required her to travel long distances by automobile and/or plane;

        d.     Agility to move rapidly to gather information;;

        e.     Ability to perform repetitive movements frequently using upper and lower extremities, for tasks such as climbing stairs, bending, and walking;

        f.     Ability to stand and or walk for long periods of uninterrupted time to gather information; and

        g.     Ability to perform Computer and Library Legal Research.

18.     As of this date, Plaintiff Hughes continues to be disabled in that she is unable

to perform the Material and Substantial Duties of her Own Occupation.

19.     Plaintiff Hughes' disability is caused primarily by persistent, chronic,

intractable pain and the medications she takes to alleviate same.

20.     Plaintiff Hughes filed a claim, cooperated with Defendants, provided proper

proof of loss, and otherwise complied with the Policy terms and conditions regarding the filing of

a claim.

21.     On or about November 21, 2002, Defendants informed Plaintiff that her claim

for long term Disability Benefits, which Defendant administered, was approved.

22.     Plaintiff continued to receive Long Term Disability Benefits through October

31, 2004, on the basis that her medical condition prevented her from performing her occupation.

23.     By correspondence dated December 10, 2004, Defendant informed Plaintiff that they were not going to pay ongoing long term disability benefits.

24.     By correspondence dated December 14, 2004 Plaintiff, through her attorneys, requested that Defendant provide copies of, *inter alia*: 1) all examining physicians' reports and notes concerning examinations of Ms. Hughes; 2) any and all claim forms, letters, or documents submitted by, or on behalf of, the participant in furtherance of the processing of her claim; 3) any and all evidence and documentation relied upon by the Plan Administrator or other fiduciary in rendering the decision on Plaintiff's claim; and 5) a complete explanation for the denial, including any and all pieces of evidence that were referred to by the Plan Administrator or other fiduciary in its evaluation of this matter.

25.     On December 22, 2004 Defendant produced what it claims to be the entire claim file.

26.     On December 24, 2004, Plaintiff once again reminded Defendant of its obligations under the Department of Labor Regulations to provide Ms. Hughes with all documentation relevant to her claim under  29 C.F.R 256.503-1(h)(2)(iii).  That letter advised Defendant that 29 C.F.R. 2560.503-1(m)(8)(i)-(iv) provides that a document, record, or other information will be considered relevant to a claimant's claim if such document, record, or other information:

(i)   Was relied upon in making the benefit determination;

\* \* \*

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

\* \* \*

(iii)  Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

\* \* \*

(iv)  In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

27.    On January 11, 2005 and February 7, 2005, Plaintiff again reminded Defendant of its obligations under the Department of Labor Regulations to provide Ms. Hughes with all documentation relevant to her claim under  29 C.F.R 2560.503-1(h)(2)(iii).

28.    On or about May 27, 2005, Ms. Hughes timely appealed Defendants' initial Adverse Benefit Determination (hereinafter "Appeal").

29.    Said Appeal positively demonstrated that Ms. Hughes was totally disabled within the meaning of the policy.

30.    Said appeal provided Defendants with *inter alia*:  1) a comprehensive description of the material duties of Ms. Hughes' occupation; 2) Plaintiff's Personal Statement detailing her excruciating pain and how same prevents her from performing the material duties of her occupation; and 3) comprehensive and objective medical records and narratives conclusively demonstrating that Plaintiff was unable to perform the material duties of her own occupation.

6

31.     Additionally, Plaintiff's Appeal reminded Defendants of the legal obligation to address and consider Plaintiff's Personal Statement and her complaints of extreme pain therein in evaluating her Appeal.

32.     Defendants failed to consider and address Plaintiff's complaints of pain.

33.     Defendants failed to consider and address Plaintiff's Occupational Description.

34.     By reason of the foregoing claims conduct, Defendants failed, by operation of law, to establish and follow reasonable claims procedures that would yield a decision on the merits of Ms. Hughes' claim 29 C.F.R. §2560.503(l).

35.     Because Defendants failed to satisfy the minimum procedural safeguards set forth in 29 C.F.R. §2560.503-1, Defendants' initial Adverse Benefit Determination and decision upon review is not entitled to any judicial deference.

36.     Specifically, in Defendant's December 10, 2004 denial letter they stated:

> We will review the claim upon receipt of the written request for review, and will notify you of our decision within a reasonable period of time but not later than 45 days after the request has been received. If an extension of time is required to process the claim, we will notify you in writing of the special circumstances requiring the extension and the date by which we expect to make a determination on review. **The extension cannot exceed a period of 45 days from the end of the initial review period.**  (Emphasis added)

37.     Sun Life denied Plaintiff's appeal and request for long term disability benefits by letter dated October 31, 2005 at least 157 days from the date of Ms. Hughes submitting her Appeal.

38.     Sun Life willfully failed to comply with ERISA regulations.

39.     Sun Life neither articulated in writing the special circumstances requiring the extension or made a determination of the appeal within 45 days from the end of the initial review period.

## THE FIDUCIARIES

40.     The Employee Retirement Income Security Act of 1974 ("ERISA") was enacted to protect the interests of employees in the administration of their employer's welfare benefit plans.  In addition to conferring numerous rights upon plan participants, ERISA imposes duties upon the people and corporations who are responsible for the operation of such plans.  By law, plan fiduciaries are required to discharge their duties prudently, diligently, and solely in the interest of the plan's beneficiaries, for the exclusive purpose of providing promised benefits.

41.     ERISA requires every employee welfare benefit plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the Plan" [29 U.S.C. § 1102 (a)(1)].  Either by operation of law or through the implementation of ERISA plan documents, the employer of Plaintiff delegated its fiduciary responsibility for claims administration to one or more of the named Defendants, either directly or indirectly.

42.     Sun Life Insurance and Annuity Company of New York, Brian Sullivan, and Debra Conner (the "Defendants") have determined or participated in determining the eligibility of Plaintiff for disability benefits and/or had the discretionary authority or discretionary responsibility in the administration of Plaintiff's plan.  Accordingly, at all relevant times herein, Defendants were and are fiduciaries pursuant to ERISA [29 U.S.C. § 1002 (21)].

8

43.     Non-Corporate Defendants' claims handling conduct and the claim decisions regarding disability benefits were implemented, coordinated, designed, guided and instituted by the Corporate Defendants with the explicit purpose of controlling, directing, and/or influencing the non-corporate Defendants to violate ERISA.

44.     The Court shall review Sun Life's decision to deny benefit under a de novo standard of review.

## COUNT ONE

### (All Defendants)

### Breach of Fiduciary Duty Under ERISA

45.     Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

46.     Upon information and belief, Defendants implementation and application of the foregoing offending claim's practices has caused and continues to cause harm to Ms. Hughes in violation of ERISA.

47.     By virtue of the conduct described above, Defendants breached their fiduciary obligations to Plaintiff under ERISA [29 U.S.C. § 1104(a)] to discharge their duties "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries . . . with the care, skill, prudence, and diligence . . . [of a] prudent man . . . and in accordance with the documents and instruments governing the plan . . . ."

48.     By managing, operating and administering ERISA-governed plans in the manner described above, Defendants have failed to exercise the care of an ordinary prudent person

9

engaged in a similar activity under prevailing circumstances, all in violation of ERISA [29 U.S.C. § 1104(a)(1)(B)].

49.     By the foregoing offending claims practices, Defendants failed to discharge their fiduciary duties in accordance with plan documents and ERISA's legislative scheme.

50.     Specifically, Defendant Brian Sullivan breached the fiduciary duty he owed to Ms. Hughes by, *inter alia*, issuing an adverse benefit determination which was wholly controverted by the weight of the medical evidence and with the knowledge that critical medical evidence was not reviewed by a medically qualified professional.

51.     Defendant, Debra Connor breached the fiduciary duty owed to Plaintiff in that she was responsible for, upon information and belief, intentionally denying Ms. Hughes with adequate time to submit her appeal and directing the claims department to withhold relevant documents from Plaintiff's claim file.

52.     Defendants, Brian Sullivan and Debra Connor breached the fiduciary duties they owed to Plaintiff in that they, *inter alia*, failed to afford weight to Plaintiff's subjective complaints of pain and by selecting a biased physicians with reputations of finding claimants "not disabled."

53.     Corporate Defendant Sun Life breached its fiduciary obligations to Plaintiff in that it implemented, authorized and/or allowed the offending claims practices discussed above to continue.

54.     As a result of the breaches of fiduciary duty as described above, Plaintiff has been harmed and continues to be harmed.

55.    As a participant in an ERISA-governed benefit plan, Plaintiff is entitled to appropriate equitable relief under ERISA [29 U.S.C. § 1132(a)(3)] to (a) obtain appropriate injunctive relief immediately stopping the offending and egregious practices that are causing ongoing harm to Plaintiff, and (b) redress the violations of §1104 set forth herein.

56.    Plaintiff does not have an adequate remedy at law.

## COUNT TWO

### (All Defendants)

### Violation of 29 C.F.R. § 2560.503-1 (b)(3)(2000)

57.    Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

58.    By virtue of the conduct described above, the corporate Defendant has wilfully caused, directed and/or improperly influenced its subsidiaries and their employees and agents to breach their obligation to maintain reasonable claims procedures in contravention of the proscriptions of ERISA and the regulations promulgated thereunder [29 C.F.R. §2560.503-1(1)(b)(3)(2000)], which prohibits conduct that unduly inhibits or hampers the fair processing of claims.

59.    As a result of the unreasonable claims procedures described above, Plaintiff has been harmed, continues to be harmed, and will be harmed in the future.

60.    As a participant in an ERISA-governed benefit plan, Plaintiff is entitled to appropriate equitable relief under ERISA [29 U.S.C. § 1132(a)(3)] to (a) obtain appropriate injunctive relief immediately stopping the offending and egregious practices that are causing ongoing harm to Plaintiff and (b)  redress the violations of ERISA[29 C.F.R. §2560.503-1] set forth herein.

61.     Plaintiff does not have an adequate remedy at law.

## COUNT THREE

## (Breach of Contract 29 U.S.C. § 1132 (a)(1)(B))

62.     Pursuant to the Policy, Defendants were obligated to commence the periodic payment of monthly benefits to Plaintiff as of October 31, 2004.

63.     Despite Plaintiff's total disability, Defendants refused and continue to refuse to pay benefits pursuant to the Policy, although payment thereof has been duly demanded.

64.     Said refusal on the part of Defendants is a willful and wrongful breach of the Policy terms and conditions.

65.     Monthly benefits to Plaintiff continue to be due and payable by Defendants with the passage of each month.

66.     Defendants are conflicted decision makers because they have a financial interest in the outcome of Plaintiff's claim and said conflict improperly influenced their adverse benefit determination.

67.     Plaintiff has exhausted all administrative appeals and remedies to the extent they exist pursuant to the conditions of the employee benefit plan.

68.     Upon information and belief, arrears are now due and owing, including interest, to Plaintiff in at least the sum of $72,000.

## COUNT FOUR

69.     Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

70.    Sun Life has taken the erroneous position that Ms. Hughes' benefits should only be $2,746.46 per month based upon a Total Monthly Earnings of $4,577.44.

71.    Pursuant to the Policy, the monthly benefit Plaintiff is entitled to is 60% of Plaintiff's monthly earnings at the time she became totally disabled.

72.    Pursuant to Sun Life's November 21, 2002 letter, Sun Life states that Ms. Hughes' W-2 for the year 2001 "listed $54, 929.25 under the box which reflects wages, tips, and other compensation".

73.    Ms. Hughes' was compensated by D'Amato & Lynch from January 1, 2001 to June 24, 2001 (her last day of work was April 24, 2001).

74.    Sun Life must subtract the short-term disability benefit from June 24, 2001 until October 29, 2001 to determine her Total Monthly Earnings because that is all the time she worked during 2001.

75.    Thus, to properly analyze here true earnings, Sun Life should have perform the following calculation:

| | |
|---|---|
| 6/24/2001 to 10/29/ 2001 | = 18 weeks |
| 18 weeks times $170.00 (STD) | = $3060.00 |
| $54,929.25 minus $3060 | = $51,869.25 (Monthly earnings from 1/1/01 to 6/24/01 - 6 months) |
| $51,869.25 divided by 6 months | = $8,644.88 (Total Monthly Earnings) |
| $8,644.88 times monthly gross benefit at 60% | = $5,186.93 |

76.    Sun Life unilaterally and without proper justification changed the amount of monthly benefit paid to Plaintiff.

77.     Sun Life failed to act as a neutral arbiter of Plaintiff's claim that her benefits were underpaid when it refused to acknowledge that Plaintiff's monthly benefit should have been at a higher monthly amount.

78.     Sun Life's refusal to address the issue of Plaintiff's proper benefit in a fair and neutral manner amounts to arbitrary and capricious conduct.

79.     The Court shall review Sun Life's decision to modify Plaintiff's benefit under a de novo standard of review.

80.     Plaintiff is without an adequate remedy at law.

**WHEREFORE,** Plaintiff Donna Hughes prays that she may have an order and/or judgment pursuant to ERISA §502(a)(3) as follows:

a)      Awarding Plaintiff injunctive relief whereby Defendants are ordered to immediately cease, as to Plaintiff, engaging in the offending practices delineated herein;

b)      Awarding Plaintiff equitable relief whereby Defendant Sun life is ordered to institute new procedures that are in full compliance with ERISA;

c)      Awarding Plaintiff a permanent injunction enjoining all named Defendants from serving as claim fiduciaries as to her claim and an imposition of a constructive trust over the trust assets controlled by Defendants, [29 U.S.C. §1109];

d)      Awarding Plaintiff her costs and expenses in this litigation, including reasonable attorneys' fees and expert fees;

d)      Allowing Plaintiff to return to this Court, upon motion, to seek further relief in the event that it becomes necessary; and

14

f)      Awarding Plaintiff such other and further relief as may be just and proper under the circumstances.

And pursuant to ERISA §502(a)(1)(B) as follows:

g)      Plaintiff is disabled pursuant to the language and within the meaning of the subject Policy of insurance issued by Defendant;

h)      Defendants must pay all benefits in arrears due and owing since the termination of benefits, plus interest; and

i)      Defendants' obligation to pay benefits to Plaintiff shall continue as long as she remains totally disabled, subject to the terms of and the applicable benefit period contained in the Policy.

J)      Defendant is obligated to pay Plaintiff the proper benefit amount as outlined in the Plan.

Dated:  Garden City, New York
        April 19, 2006

By:    _____/S/_____

Justin C. Frankel (JF-5983)
FRANKEL & NEWFIELD, P.C.
585 Stewart Avenue - Suite 301
Garden City, New York 11530
(516) 222-1600

Attorneys for Plaintiff

X:\Shared\Hughes\COMPLAINT.wpd